UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| LYNN MERRILL, NICHOLAS GIUDICE, PAULINE LAMONTAGNE, CHERYL PEABODY and DISABILITY RIGHTS MAINE,<br><br>      PLAINTIFFS<br><br>v.<br><br>MATTHEW DUNLAP, Secretary of State, in his official capacity; the MAINE DEPARTMENT OF THE SECRETARY OF STATE, and, in their official capacities, KELLY GOOLDRUP, Augusta City Clerk & Registrar of Voters; LISA GOODWIN, Bangor City Clerk & Registrar of Voters; KATHERINE JONES, Portland City Clerk & Registrar of Voters; LISA GILLIAM, Winslow Town Clerk & Registrar of Voters; and the Cities of AUGUSTA, BANGOR, PORTLAND and the Town of WINSLOW,<br><br>      Defendants | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )  CIVIL ACTION NO. 1:20-cv-00248 -JAW |

**FIRST AMENDED COMPLAINT**
**FOR DECLARATORY AND INJUNCTIVE RELIEF**

**INTRODUCTION**

1.    Plaintiffs bring this action against the Department of the Secretary of State of the State of Maine, and, in their official capacities, Defendant Matthew Dunlap, Secretary of State; Defendant Kelly Gooldrup, Town Clerk and Registrar of Voters in the City of Augusta; Defendant Lisa Goodwin, City Clerk and

1

Registrar of Voters in the City of Bangor; Defendant Katherine Jones, City Clerk and Registrar of Voters in the City of Portland; and Defendant Lisa Gilliam, Town Clerk and Registrar of Voters in the Town of Winslow, and the Cities of Augusta, Bangor and Portland and the Town of Winslow. Plaintiffs bring their claims under Title II of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12131 *et seq.*, Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794 *et seq.*, and the Maine Human Rights Act, 5 M.R.S.A. 4551 *et seq.*

2.     Plaintiffs seek to vindicate their rights as individuals with disabilities to vote privately and independently by absentee ballot in the November 3, 2020, election and in future elections. Plaintiffs have been denied that right in violation of federal and state laws. On the basis of these violations, Plaintiffs seek a temporary restraining order, preliminary and permanent injunctive relief, a declaratory judgment, and attorney's fees and costs.

3.     The novel coronavirus SARS-CoV-2 ("COVID-19" or "the coronavirus") has drastically impacted business as usual in Maine over the past four months.

4.     Governor Janet Mills responded to the pandemic by taking emergency measures designed to slow the spread of the coronavirus. These measures have included changes to the way the State conducts its statewide and local elections. For example, the Governor's emergency orders delayed voting on Maine's primary

election and state bond referendum questions from June 9, 2020, to July 14, 2020. The order also expanded the Absentee Voting program to encourage all Maine registered voters to vote safely from home via absentee ballot.

5.      Maine's Absentee Voting program requires voters to fill out a paper ballot using a pen and to return the ballot by U.S. Mail or by hand delivery to a public place.

6.      Plaintiffs are unable to independently mark a paper ballot because they are blind.[1]

7.      Maine allows all registered voters to vote via absentee ballot, for any reason.

8.      Yet Maine's Absentee Voting program on the state and local level provides no alternatives to accommodate blind individuals who wish to vote privately, independently and safely from home.

9.      Maine's reliance exclusively on paper forms and ballots for absentee voting prevents Plaintiffs, and others with print disabilities, from independently and privately casting a vote.

10.     Individuals who are blind must choose between their health and their right to vote privately and independently because they are forced to go to a public voting place to privately and independently mark their ballot.

---

[1] For semantic convenience throughout this Complaint, the term "blind" is used in its broadest sense to include all persons who, under federal and state civil rights laws, have a vision-related disability that requires alternative methods to access print.

11. The Constitution of the State of Maine guarantees the right to a secret ballot. "[T]he right of secret voting shall be preserved." ME Const., Art. II, § 5; see also Help America Vote Act of 2002, Pub. L. 107-252 § 301, 116 Stat. 1666, 1704 (codified as amended at 52 U.S.C. 21081) (providing the right to review and change one's ballot privately and independently in federal elections).

12. Maine and its municipalities are required to make their Absentee Voting programs accessible to blind voters, and others who are unable to independently mark a paper ballot, as many other states have done.

## JURISDICTION AND VENUE

13. Plaintiffs' federal claims are made pursuant to Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq.,* and Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794 *et seq.* Plaintiffs' state claims are made pursuant to Subchapter 5 of the Maine Human Rights Act ("MHRA"), 5 M.R.S. § 4551 *et seq.*

14. This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1343(a)(4) because Plaintiffs' claims arise under the ADA and Section 504. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. 1367(a).

15. Venue is proper in this Court under 28 U.S.C. § 1391(b)(1).

16. Declaratory and injunctive relief are authorized by this Court pursuant to 28 U.S.C. §§ 2201, 2202.

## PARTIES

17. Lynn Merrill is a citizen of the United States. Ms. Merrill is at least 18 years of age. Ms. Merrill resides in Augusta, Maine, where she is registered to vote. Ms. Merrill has voted in past elections. She plans to vote in the general election on November 3, 2020 and in subsequent federal, state, and local elections. Ms. Merrill meets all qualifications to vote in Augusta, Maine.

18. Nicholas Giudice, Ph.D., is a citizen of the United States. Dr. Giudice is at least 18 years of age. He resides in Bangor, Maine, where he is registered to vote. Dr. Giudice has voted in past elections and plans to vote in the general election on November 3, 2020, and in subsequent federal, state, and local elections. Dr. Giudice meets all qualifications to vote in Bangor, Maine.

19. Pauline Lamontagne, Esq., is a citizen of the United States. Ms. Lamontagne is at least 18 years of age. She resides in Portland, Maine, where she is registered to vote. Ms. Lamontagne has voted in past elections and plans to vote in the general election on November 3, 2020, and in subsequent federal, state, and local elections. Ms. Lamontagne meets all qualifications to vote in Portland, Maine.

20.     Cheryl Peabody is a citizen of the United States. Ms. Peabody is at least 18 years of age. Ms. Peabody resides in Winslow, Maine, where she is registered to vote. Ms. Peabody has voted in past elections and plans to vote in the general election on November 3, 2020, and in subsequent federal, state, and local elections. Ms. Peabody meets all qualifications to vote in Winslow, Maine.

21.     Disability Rights Maine (DRME) is an independent non-profit corporation organized under the laws of the State of Maine. DRME is a Protection and Advocacy System ("P&A"), as that term is defined under the Developmental Disabilities Assistance and Bill of Rights ("DD Act"), 42 U.S.C. § 15041 et seq., the Protection and Advocacy for Individuals with Mental Illness Act of 1986 ("PAIMI Act"), 42 U.S.C. § 10801 et seq., and the Protection and Advocacy of Individual Rights Act ("PAIR Act"), 29 U.S.C. § 794e et seq., with offices located at 160 Capitol Street, Suite 4, Augusta, ME 04330.

22.     As Maine's Protection & Advocacy system, DRME is specifically authorized to pursue legal, administrative, and other appropriate remedies or approaches to ensure the protection of, and advocacy for, the rights of individuals with disabilities. 42 U.S.C. § 15043(a)(2)(A)(i); 5 M.R.S.A. § 19505. DRME represents the interests of Maine citizens with disabilities, and the voting rights of people with disabilities are germane to the organization's purpose. Pursuant to the authority vested in it by Congress to file claims of rights violations on behalf of

individuals with disabilities, DRME brings claims on behalf of individuals with disabilities, including the individuals named herein, who are seeking or may seek the right to vote using an accessible absentee ballot in the November 3, 2020 General Election, and for all future elections involving the use of the Absentee Voting Program.

23.     Pursuant to the authority vested in it by Congress to file claims of rights violations on behalf of individuals with disabilities, DRME brings claims on behalf of individuals with disabilities, including the individuals named herein who are seeking or may seek the right to vote using an accessible absentee ballot in the November 3, 2020 General Election, and for all future elections involving the use of the Absentee Voting program.

24.     Defendant Matthew Dunlap is the Secretary of State of Maine, and in that position, leads the Maine Department of the Secretary of State. Defendant Sec. Dunlap issues rules regarding voting in the State of Maine and supervises and administers Maine's elections, including the absentee voting program. He is sued in his official capacity only.

25.     Defendant Maine Department of the Secretary of State is the department within the Maine state government tasked with administering and supervising elections within the State of Maine. The Department receives federal

funds that are designated to conduct elections in the State of Maine, and is subject to Section 504 of the Rehabilitation Act of 1973.

26.     Although Defendant Maine Department of the Secretary of State and Defendant Dunlap are tasked with administering and supervising elections within the State of Maine, they have failed to provide an absentee ballot system that is accessible to voters with disabilities.

27.     In addition, at all relevant times, the Department and Sec. Dunlap have provided no plan or system to ensure that local ballots are accessible in the voting machines that the Department provides at all polling places in Maine. As a result, people with print disabilities have been forced to obtain assistance from others with voting on local ballots even when voting at polling places in all municipalities across Maine.

28.     Defendant Kelly Gooldrup is the current City Clerk and Registrar of Voters of the City of Augusta, Maine, and substitutes for Defendant Tracy Roy, who was the City Clerk and Registrar of Voters when this lawsuit was filed on July 15, 2020. Defendant Gooldrup is sued in her official capacity only.   As the Registrar of Voters, it is Defendant Gooldrup's responsibility to administer and operate all aspects of State and Local Elections in Augusta.

29.     Defendant Lisa Goodwin is the City Clerk and Registrar of Voters of the City of Bangor, Maine. Defendant Goodwin is sued in her official capacity

only.  As the Registrar of Voters, it is Defendant Goodwin's responsibility to administer and operate all aspects of State and Local Elections in Bangor.

30.    Defendant Katherine Jones is Registrar of Voters of the City of Portland, Maine. Defendant Jones is sued in her official capacity only.  As the Registrar of Voters, it is Defendant Jones's responsibility to administer and operate all aspects of State and Local Elections in Portland.

31.    Defendant Lisa J. Gilliam is the Registrar of Voters of the Town of Winslow, Maine. Defendant Gilliam is sued in her official capacity only. As the Registrar of Voters, it is Defendant Gilliam's responsibility to administer all aspects of State and Local Elections in Winslow.

32.    The cities of Augusta, Bangor, and Portland and the Town of Winslow are all "public entities" or "public accommodations" pursuant to the ADA and the MHRA. They each receive federal funds and are, therefore, subject to the provisions of the Rehabilitation Act of 1973.

## FACTS

### COVID-19 and the Urgent Call for Absentee Voting

33.    On March 15, 2020, Maine Governor Janet Mills proclaimed a state of emergency to authorize the use of emergency powers to expand and expedite the State's response to the serious health and safety risks of the highly contagious

COVID-19. These emergency powers extended to the running of statewide and local elections.

34.    On April 10, 2020, Governor Mills signed an Executive Order moving Maine's primary election and statewide referendum from Tuesday, June 9, 2020, to Tuesday, July 14, 2020. This extraordinary step was for the purpose of planning measures to reduce public exposure to COVID-19. See Executive Order No.39 FY 19/20, *An Order Modifying the Primary Election to Reduce Exposure to COVID-19*.

35.    On June 3, 2020, Governor Mills issued another Executive Order pertaining to elections. Executive Order 56 FY 19/20, *An Order to Further Facilitate the State Primary and Local Elections within Public Health Restrictions Due to COVID-19*.

36.    The Governor's Order also allows applications for absentee ballots to be made in writing or in person, without specifying a reason, up to and including the day of the election.   Executive Order 56 FY 19/20.

37.    The delay in the statewide election is intended in part to provide Mainers additional time to request absentee ballots in order to minimize in-person interaction at the polls.  Executive Order 56 FY 19/20.

38.    Governor Mills has recommended and urged Maine voters to vote by absentee ballot in order to reduce the spread of COVID-19.

39.     Defendant Sec. Dunlap has also recommended and urged that Maine voters use an absentee ballot to "help reduce the possibility of virus exposure for voters and election workers."[2]

40.     Defendant Sec. Dunlap recommends that the "safest option" to return a ballot is to mail it to the voter's town clerk, which must be received no later than 8:00 p.m. on Election Day. *Id.*

41.     Defendant Sec. Dunlap has also stated that the State is taking all precautions, but cannot require the public to wear masks while voting.

42.     Nationwide, as of July 13, 2020, there have been 3,296,599 total cases of COVID-19, and 134,884 deaths.[3]

43.     Adults with disabilities are three times more likely than adults without disabilities to have the serious underlying medical conditions which place them at a higher risk of severe illness form COVID-19.[4]

44.     Because voters often must crowd together to vote in polling places, polling places are ideal environments to further the spread of the COVID-19 virus. The Centers for Disease Control and Prevention ("CDC") has encouraged people

---

[2] See Maine Department of the Secretary of State, May 19, 2020, online at https://www.youtube.com/watch?v=OH4VuHk0mk0
[3] Centers for Disease Control and Prevention, Coronavirus Disease 2019 (COVID19), Cases in the U.S., https://www.cdc.gov/coronavirus/2019-ncov/casesupdates/cases-in-us.html.
[4] See Centers for Disease Control and Prevention, People Who Need Extra Precautions: People with Disabilities, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-disabilities.html

to use an absentee or mail-in ballot rather than traveling to polling places on election day.[5]

45.     Technology is readily available that would afford Plaintiffs, and other voters who are blind, the opportunity to cast their votes through absentee ballots privately and independently—as sighted individuals may do. But Defendants have not made this technology available to Plaintiffs.

46.     The need for immediate implementation of accessible absentee ballots is urgent in light of the ongoing COVID-19 global pandemic.

47.     Many Maine voters are expected to vote by absentee ballot in the upcoming elections due to concerns about COVID-19. According to recent news reports of July 3, "an unprecedented 163,000 Maine voters have requested absentee ballots ahead of the July 14, 2020 primary election."[6]

48.     Due to urgent concerns about the virus and shortage of poll workers, many Maine cities and towns are also pushing for absentee voting.[7]

49.     The dangers posed by in-person voting are real. Wisconsin officials reported that at least 40 people may have contracted COVID-19 due to in-person participation in that state's April 7, 2020, primary election.[8]

---

[5] See Centers for Disease Control and Prevention, Coronavirus Disease 2019 (COVID-19), Recommendations for Election Polling Locations, https://www.cdc.gov/coronavirus/2019-ncov/community/election-polling-locations.html
[6] Piper, Jessica, "Maine is seeing a historic number of absentee ballot requests ahead of the July election," Bangor Daily News (July 3, 2020), https://bangordailynews.com/2020/07/03/politics/maine-is-seeing-a-historic-number-of-absentee-ballot-requests-ahead-of-the-july-election/
[7] Piper, Jessica, "Maine cities and towns push absentee voting for July election reshaped by virus," Bangor Daily News (May 17, 2020) https://bangordailynews.com/2020/05/17/politics/maine-cities-and-towns-push-absentee-voting-for-july-election-reshaped-by-virus/

50.     With respect to the general election in Maine, the danger is heightened because many polling places will be closed, in part due to staffing shortages, resulting in longer lines and denser crowds at the open polling places.

51.     Consolidation of polling places is likely in Maine due to COVID-19, creating longer lines and more people at one location.[9]

52.     At the polling places that remain open, it will be more difficult for blind individuals, including Plaintiffs, to ensure they remain six feet apart from other individuals, as is recommended by the CDC in order to stem the spread of COVID-19—especially if such individuals need assistance to cast their ballot. Nor can blind people as readily confirm whether others around them are wearing masks.

53.     While blindness on its own is not a risk factor for COVID-19, people with vision disabilities have increased risk of exposure due to their disabilities.[10] People with vision disabilities often rely on touch more than sighted people and therefore are at heightened risk of touching surfaces with the virus.

---

[8] Teran Powel, "40 Coronavirus Cases In Milwaukee County Linked To Wisconsin Election, Health Official Says," WUWM 89.7 (Apr. 24, 2020), https://www.wuwm.com/post/40-coronavirus-cases-milwaukee-county-linkedwisconsin-election-health-official-says#stream/0

[9] Edwards, Keith, "Augusta voting to be consolidated at Civil Center: Social distancing requirements and a lack of poll workers have prompted the city to temporarily move away from ward voting," Kennebec Journal (June 9, 2020), https://www.centralmaine.com/2020/06/09/augusta-voting-to-be-consolidated-at-augusta-civic-center/

[10] See COVID-19 and Blindness: Staying Safe and How to Help, World Services for the Blind, https://www.wsblind. org/blog/2020/3/26/covid-19-and-blindness-staying-safe-and-how-to-help (last visited July 23, 2020).

54.     The journey to a polling place also is more hazardous for blind individuals than it is for sighted individuals. Because Plaintiffs cannot drive, they disproportionately rely on car pool or public transportation, which necessarily brings them into close proximity with others.

55.     The individual Plaintiffs in this action are all Maine residents who are registered to vote in their municipalities. Three of the four have underlying medical conditions that place them at high risk if they contract COVID-19.  All are blind or visually impaired. And all wish to vote in November 3, 2020, general election and future elections privately, independently, and safely by absentee ballot.

56.     Like many Maine residents, the Plaintiffs wished to follow the advice of the Governor and Secretary of State and vote by absentee ballot for the July 14, 2020, state primary and local elections. The Plaintiffs each contacted their Town or City Clerk and the Secretary of State and requested an electronic, accessible absentee ballot in that election. All were denied because Defendants failed to ensure that Maine's Absentee Ballots are accessible to them.

**Lynn Merrill of Augusta, Maine**

57.     Plaintiff Lynn Merrill resides in Augusta, Maine.

58.     Ms. Merrill has a physical impairment, blindness, and is substantially limited in the major life activity of seeing. She uses a guide dog and assistive technology including text to speech software on her computer and iPhone.

59.    Ms. Merrill is registered to vote in Augusta, Maine. She is qualified to vote in federal, state, and local elections.

60.    Ms. Merrill intends to vote in the general election on November 3, 2020. But because of the COVID-19 pandemic, she does not intend to go to her local polling place in order to vote.  In addition to being blind, Ms. Merrill is an older adult with an underlying medical condition that puts her at increased risk for severe illness from COVID-19. In addition, she does not drive, and travelling to the polls would place her in close proximity with others. Therefore, she wishes to vote by accessible absentee ballot for the November 3, 2020, general election, and she would like to have this option for future federal, state, and local elections.

61.    The only absentee ballots offered to Maine residents who are not service members or overseas citizens are paper ballots. Paper ballots are not accessible to Ms. Merrill because she is blind.

62.    Voting electronically would be an effective accommodation for Ms. Merrill. She would be able to vote through a universal, accessible balloting platform that is readily available from Democracy Live or other ballot-marking companies. In addition, Ms. Merrill is able to review, complete, and return fillable PDF documents on her computer. She would be independently and privately able to vote by electronic absentee ballot using the JAWS software she already has on her computer to review and complete her choices.  Voting electronically would

15

avoid her having to have assistance of a sighted individual to read the printed text on the ballot, to make her selections, and to return the ballot to her City Clerk.

63.    Ms. Merrill contacted then-Augusta City Clerk Tracy Roy on or about June 15, 2020, June 26, 2020, June 28, 2020, and June 29, 2020, to request reasonable modification, to vote with an electronic ballot that is accessible to her. In her communications with Ms. Roy, Ms. Merrill requested an accessible absentee ballot for the July 14, 2020 election and other upcoming elections, and explained that she would like to vote absentee because she is blind and has underlying conditions that place her at higher risk if she votes at the polls.

64.    On Monday, June 29, 2020, Ms. Roy contacted Ms. Merrill by telephone and stated that, regarding absentee ballots, Ms. Merrill could have two people she trusts assist her with completing the paper absentee ballot. Ms. Merrill replied to Ms. Roy that the method she was suggesting would not allow the privacy to which every citizen is entitled. Ms. Roy simply repeated that they [the voting assistants] would be people that Ms. Merrill trusts. At the end of the conversation, Ms. Roy verbally confirmed that there is no accommodation for private absentee voting for individuals who are blind.

65.    Ms. Merrill is an active member and an officer in the American Council of the Blind ("ACB"), Maine Chapter. On or about June 15, 2020, the ACB President of the Maine chapter emailed a letter (authored by Ms. Merrill) to

16

Case 1:20-cv-00248-JAW   Document 25-1   Filed 09/08/20   Page 17 of 50   PageID #: 254

the Defendants Dunlap and the Department of the Secretary of State. In the letter, the ACB President expressed concern that voters with disabilities do not have equal access and opportunity to vote independently and privately via absentee ballot in Maine. The email also requested the Secretary of State's plan for providing accessible absentee voting for people who are blind. The ACB never received a response from Defendant Sec. Dunlap or anyone at the Secretary of State's Office.

66.    Ms. Merrill wants to vote by absentee ballot in the general election on November 3, 2020, and in future federal, state, and local elections.  She seeks declaratory and injunctive relief from the Court to allow her to vote independently, privately, and safely via absentee, electronic ballot.

### Dr. Nicholas Giudice of Bangor, Maine

67.    Plaintiff Nicholas Giudice, Ph.D. resides in Bangor, Maine.

68.    Dr. Giudice has a physical impairment, blindness, or abnormal vision loss. Dr. Giudice is substantially limited in the major life activity of seeing. He uses a guide dog and assistive technology including text to speech software on his computer and iPhone.

69.    Dr. Giudice is registered to vote in Bangor, Maine. He is qualified to vote in federal, state, and local elections in Bangor.

70.     Dr. Giudice intends to vote on November 3, 2020. But because of the COVID-19 pandemic, he does not intend to go to his local polling place in order to vote.   Rather, he would like to vote safely, privately, and independently by absentee ballot.  Because he is blind, Dr. Giudice does not drive and must take public transportation or arrange for a ride to get to the polls, which places him in close proximity with others during the pandemic and is an inconvenience. Therefore, Dr. Giudice wishes to vote by accessible, electronic absentee ballot for the November 3, 2020, general election and he would like to have this option for future federal, state, and local elections.

71.     The only absentee ballots offered to Maine residents who are not service members or overseas citizens are paper ballots. Paper ballots are not accessible to Dr. Giudice because he is blind.

72.     Voting electronically would be an effective accommodation for Dr. Giudice. Dr. Giudice would be able to vote through a universal, accessible balloting platform that is readily available from Democracy Live or other ballot-marking companies. In addition, Dr. Giudice is able to review, complete, and return fillable PDF documents on his computer. He would be independently and privately able to vote by electronic absentee ballot using the JAWS software he already has on his computer, or a similar program, to review and complete his choices. Voting electronically would avoid his having to have assistance of a

sighted individual to read the printed text on the ballot, to make his selections, and to return the ballot to his City Clerk.

73.     Therefore, Dr. Giudice emailed Bangor City Clerk Lisa Goodwin and the Secretary of State's Office on July 6, 2020, to request an accessible electronic absentee ballot. Dr. Giudice stated in the email that he is blind and that he would like to avoid going to the polls during the pandemic, and he requested to vote absentee in the Primary and Special Referendum Election on July 14, 2020, and the General Election on November 3, 2020.  He also indicated that he cannot access a paper absentee ballot, and requested reasonable modification, an accessible electronic ballot, or another process that would allow him to vote privately and independently without going to the polls.

74.     On July 7, 2020, Kristen Schulze Muszynski, Spokesperson for the Department of the Secretary of State, responded by email. Ms. Muszyniski indicated that those who cannot mark a paper ballot may use the ExpressVote system at the polling place. Defendants provided no option for an accessible absentee ballot. Defendant Goodwin did not respond to Dr. Giudice's request for reasonable modification.

75.     Defendants denied Dr. Giudice's request to vote privately and independently via absentee ballot in the July 14, 2020, and future elections.

76.    Dr. Giudice wants to vote by absentee ballot in the general election on November 3, 2020, and in future federal, state, and local elections.  He seeks declaratory and injunctive relief from the Court to allow him to vote independently, privately, and safely via absentee, electronic ballot.

### Pauline Lamontagne, Esq., of Portland, Maine

77.    Plaintiff Pauline Lamontagne, Esq., resides in Portland, Maine.

78.    Ms. Lamontagne has a physical impairment, blindness, or abnormal vision loss. Ms. Lamontagne is substantially limited in the major life activity of seeing. She uses a guide dog, a white cane and assistive technology including text to speech software on her computer and iPhone.

79.    Ms. Lamontagne is registered to vote in Portland, Maine. She is qualified to vote in federal, state, and local elections in Portland.

80.    Ms. Lamontagne intends to vote in the general election on November 3, 2020. But because of the COVID-19 pandemic, she does not intend to go to her local polling place in order to vote.  In addition to being blind, Ms. Lamontagne is over 65 years old with an underlying medical condition that puts her at increased risk for severe illness from COVID-19. Also, neither she nor her husband drives, and travelling to the polls would place her in close proximity with others. Therefore, she wishes to vote by accessible absentee ballot for the November 3,

2020, general election, and she would like to have this option for future federal, state, and local elections.

81.     The only absentee ballots offered to Maine residents who are not service members or overseas citizens are paper ballots. Paper ballots are not accessible to Ms. Lamontagne because she is blind.

82.     Voting electronically would be an effective accommodation for Ms. Lamontagne. She would be able to vote through a universal, accessible balloting platform that is readily available from Democracy Live or other ballot-marking companies. In addition, Ms. Lamontagne is able to review, complete, and return fillable PDF documents on her computer. She would be independently and privately able to vote by electronic absentee ballot using the JAWS software she already has on her computer to review and complete her choices.   Voting electronically would avoid her having to have assistance of a sighted individual to read the printed text on the ballot, to make her selections, and to return the ballot to her City Clerk.

83.     Therefore, on or about July 2, 2020, Ms. Lamontagne emailed Defendant Portland City Clerk, Katherine Jones, and the Defendant Secretary of State's Office to request reasonable modification, to vote absentee via an electronic ballot that is accessible to her.  In her email, Ms. Lamontagne disclosed that she is blind and requested "an electronic accessible ballot or another process which

would allow me to vote independently and privately." She further stated that the "paper ballot necessitates my using an aide; therefore, it is not private, nor am I completing the ballot independently. Is an accessible electronic ballot available or, for example, a touch tone telephone available with the candidates and referendum issues?" She indicated that she is planning to vote in the primary election and also the general election in November.

78.    On July 2, 2020, Patricia Condon, Director, Constituent Services of the Secretary of State's Office, replied to Ms. Lamontagne via email that "the municipal clerk from South Portland [sic] should advise about their accessible voting system, which is a ballot marking device at the polling place. Thank you again for including our office regarding your inquiry."

79.    The Secretary of State's Office did not provide Ms. Lamontagne with a viable option that would allow her to vote independently and safely from her home via absentee ballot. Rather, the only option given was a ballot marking device at the polls.

80.    On or about July 7, 2020, Ms. Lamontagne called Defendant Jones because she had not heard back from her. Defendant Jones told Ms. Lamontagne that only a paper ballot was available for absentee voting. Ms. Lamontagne shared that she is disappointed. Ms. Lamontagne, an attorney, noted that it is her understanding that West Virginia and New York have processes for people with

disabilities to be able to vote by accessible absentee ballots both privately and independently.  She questioned why this was not possible in Maine. Defendant Jones did not provide an explanation.

81.   Ms. Lamontagne did not wish to go to the polls for the July 14, 2020, statewide primary and local election due to her concern about the coronavirus. But she wanted her vote to count, so she was forced to choose between going to the polls and risking exposure to COVID-19 or voting absentee by paper ballot without privacy or independence. Ms. Lamontagne voted by absentee ballot with and her ballot was cast neither privately nor independently.

82.   Ms. Lamontagne wants to vote by absentee ballot in the general election on November 3, 2020, and in future federal, state, and local elections.  She seeks declaratory and injunctive relief from the Court to allow her to vote independently, privately, and safely via absentee, electronic ballot.

### Cheryl Peabody of Winslow, Maine

83.   Plaintiff Cheryl Peabody resides in Winslow, Maine.

84.   Ms. Peabody has a physical impairment, blindness or abnormal vision loss. Ms. Peabody is substantially limited in the major life activity of seeing.

85.   Ms. Peabody is registered to vote in Winslow, Maine. For past elections, she has gone to her polling place in order to cast her vote, using accessible voting machines, in person.

86.     Ms. Peabody intends to vote in the general election on November 3, 2020. But because of the COVID-19 pandemic, she does not intend to go to her local polling place in order to vote.  In addition to being legally blind, Ms. Peabody is at increased risk for severe illness from COVID-19. Therefore, she wishes to vote by accessible absentee ballot for the November 3, 2020, general election, and she would like to have this option for future federal, state, and local elections.

87.     The only absentee ballots offered to Maine residents who are not service members or overseas citizens are paper ballots. Paper ballots are not accessible to Ms. Peabody.

88.     Voting electronically would be an effective accommodation for Ms. Peabody. She would be able to vote through a universal, accessible balloting platform that is readily available from Democracy Live or other ballot-marking companies. In addition, Ms. Peabody is able to review, complete, and return fillable PDF documents on her computer. She would be independently and privately able to vote by electronic absentee ballot using the screen magnification she already has on her computer to review and complete her choices.  Voting electronically would avoid her having to have assistance of a sighted individual to read the printed text on the ballot and to make her selections.

89.     On June 30, 2020, Ms. Peabody emailed Winslow Town Clerk and Registrar of Voters, Lisa Gilliam. Ms. Peabody wrote that she is a registered voter

in Winslow, that she is legally blind, and that she requests an accessible absentee ballot. She also disclosed that she is an older adult with an underlying medical condition that places her at increased risk for a severe illness if she contracts COVID-19.

90.    On July 1, 2020, Ms. Gilliam replied to Ms. Peabody's request for an accessible, electronic absentee ballot as follows:

> Late yesterday afternoon I spoke with the Elections Division of the Secretary of State's Office to find out if they have an alternative way for voters to cast their vote other than by paper ballot; unfortunately they do not have a different method.  If you would like I can mail you an absentee ballot and on the return envelope there is a place for your signature and for the signature of an aide who would assist by reading and/or marking the ballot for you.

91.    Ms. Peabody wants to vote independently and privately. She does not wish to have an assistant fill in her choices for her.

92.    Defendants denied Ms. Peabody's request for modification to vote privately and independently via absentee ballot in the July 14, 2020, and future elections, and failed to have an absentee voting option that is accessible to voters with disabilities. Ms. Peabody wants to vote absentee in the upcoming general election on November 3, 2020, and in future federal, state, and local elections, independently and privately.  Ms. Peabody seeks declaratory and injunctive relief from the Court to allow her to vote independently and privately via absentee ballot.

**Defendants Were On Notice of the Inaccessible Absentee Voting Program in Maine**

93.     On Friday, September 27, 2019, Mark Riccobonno, President of the National Federation of the Blind, emailed Secretary Dunlap a detailed letter "to remind you of your obligation, as required by federal law and recent court decisions, to provide voters with print disabilities an accessible way to privately and independently mark an absentee ballot." The letter outlined the State of Maine's obligation under Title II of the ADA and Court decisions including *Nat'l Fed'n of the Blind v. Lamone*, 813 F.3d 494, 506 (4th Cir. 2016), provided guidance regarding accessible absentee ballot-marking systems for use in U.S. elections, and offered the expertise of the NFB to help the State of Maine in developing an accessible ballot-marking tool.

94.     NFB did not receive a response from Defendants Sec. Dunlap or the Maine Department of the Secretary of State.

95.     On or about June 14, 2020, the President of the Maine Chapter of the American Council of Blind ("ACB"), whose group includes the Plaintiffs, emailed a letter to Defendant Sec. Dunlap. The letter expressed concern about the lack of access to absentee ballots for voters with disabilities, and requested Maine's plan for making the absentee voting process accessible to blind voters.

96.     ACB did not receive a response from Defendant Sec. Dunlap Defendants Sec. Dunlap or the Maine Department of the Secretary of State.

97.    On or about June 30, 2020, Disability Rights Maine counsel for Plaintiffs spoke with Defendant Sec. Dunlap and requested accessible absentee ballots for the upcoming primary election and the general election in November. Defendant Sec. Dunlap indicated that providing electronic accessible absentee ballots would definitely not be possible for the July 14, 2020 election, and "there are no guarantees for the general election." On or about July 2, 2020, counsel for Plaintiffs provided a follow-up letter to Defendant Sec. Dunlap requesting that he reconsider, given the fundamental rights at stake and the fact that other states have accomplished providing accessible absentee ballots for voters with disabilities.

98.    Defendants all refused the individual requests for reasonable modification from each of the Plaintiffs for the July 14, 2020 Primary Election and the November 3, 2020 Presidential Election, and have failed to ensure that Maine's Absentee Ballot Program will accommodate them and other blind voters for future elections.

## Overview of Current Absentee Voting Procedures in Maine

99.    The State of Maine offers the option of absentee voting to any registered voter who requests an absentee ballot for any reason.[11]

100.   Absentee voting allows registered voters to cast a ballot from their home without having to go to a public voting place on Election Day.

---

[11] 21-A M.R.S. § 751.

101.   Absentee ballots can be requested by the voter

-   in writing by mail, in person or by facsimile;

-   by telephone;  and

-   by electronic means authorized by the Secretary of State.[12]

102.   To request a ballot electronically, a voter may access an application for an absentee ballot on Maine.gov, a secure online service provided by the Secretary of State.[13]

103. The Application for Absentee Ballot on the Secretary of State's website is a fillable or blank PDF request form that the voter can complete online and submit to the Secretary of State, Division of Elections, or print, fill out, and submit.[14]

104.   After an absentee ballot is requested online, the Secretary of State's Office forwards the request for an absentee ballot to the voter's town or city clerk. The clerk's office then sends paper ballot(s) to the voter via U.S. Mail.

105.   Once the paper ballot is received by the voter, he or she must complete the following steps in order to vote:

A. Sign the return envelope in the voter's signature line on the outer flap of the envelope.

---

[12] 21-A M.R.S. § 753-A.
[13] The online application can be found at https://www.maine.gov/cgi-bin/online/AbsenteeBallot/index.pl
[14] The online application can be found at  https://www.maine.gov/online/AbsenteeBallot/ABS-2020-07-14.pdf

B. To make choices on the ballot, the voter must fill in the oval next to their choice completely, using a ballpoint pen with with black or blue ink.

C. When finished voting, refold the ballots and seal them in the return envelope.

D. Check that the voter has signed the envelope.

E. Return the ballot to the town clerk.

106.   This process of voting by absentee ballot is wholly inaccessible to Plaintiffs and other individuals with print disabilities.

107.   Plaintiffs are unable to independently sign in the voter's signature line on the outer flap of the envelope; they cannot independently and privately make choices on the paper ballot; they cannot fill out the choices with a blue or black ink pen. Plaintiffs cannot see to discern which ballots to place in which envelopes. They cannot double check to ensure they signed the envelope, as the Secretary of State's Office advises voters to do. The entire process of voting by absentee ballot is inaccessible to Plaintiffs and all individuals who are blind or have print disabilities.

108.   If a voter is unable to sign the declaration, Maine law allows a witness to sign the "return" envelope and affirm the voter was unable to sign his or her own name, and that the witness helped the voter complete his or her ballot.

109. Because Plaintiffs must rely on the assistance of another, they cannot vote privately and independently using absentee ballots.

110. By forcing Plaintiffs to seek out third party assistance, the absentee and mail-in ballots system jeopardizes the safety of Plaintiffs and other blind individuals during the COVID-19 pandemic.

111. Requiring Plaintiffs to locate at least two individuals whom they trust to assist them in voting places a barrier on Plaintiffs' right to vote independently, freely, and secretly. This would also require individuals who are blind to break social distancing guidelines, if, for example, they don't have one or two trusted individuals already as part of their household.

112. And although Plaintiffs could choose to vote in person at the general election on November 3, 2020, doing so may put their health (or even their lives) at risk. Plaintiffs are entitled to equal access to an absentee or mail-in ballot to vote privately and independently, as sighted individuals can.

113. Because Maine's Absentee Voting program is not accessible to Plaintiffs, they are unable to exercise their fundamental, Constitutional right to vote by secret ballot.[15]

114. Making Maine's UOCAVA absentee ballot available to all blind voters is one way that Defendants could have provided modification for the July

---

[15] ME Const. art. II, § 5.

14, 2020, primary, even if it was only a temporary solution to this longstanding problem. Defendants were made aware of this option, but failed to implement it. They must do better for the November 3, 2020 Presidential Election and beyond.

**Maine Can Easily Make Its Absentee Voting Program Accessible**

115. Technology is available and in use across the country that allows voters with disabilities to register and vote and request, receive, fill out, and return their absentee ballots electronically.

116. Several third party vendors provide online or electronic ballot marking systems. These include Prime III, Democracy Live, Five Cedars, Dominion Voting, and Voting Works by Enhanced Voting. Maryland has designed and implemented its own online ballot marking system.

117. For example, Democracy Live offers the Omniballot which is an electronic, fully accessible absentee and UOCAVA ballot solution. Most recently, the states of MI, PA, DE, VT OH, FL contracted with Democracy Live to set up their fully accessible, ADA-compliant at-home absentee voting portals. Democracy Live, for example, is currently available to provide its services to Maine in time for the November 3, 2020 election.

117. Maryland makes its ballot marking software available to other states for free, and both Prime III and Voting Works are also available free of charge.

118.   For forms (other than the ballot), related to the absentee voting program, Defendants need simply provide the paperwork in accessible, fillable PDFs, and allow applicants to use electronic signatures and submit the forms over email. Making such forms accessible is easily done in Adobe. Such forms can also be securely signed on the computer.

119.   Several states have recently changed their absentee ballot procedures to make them accessible to voters with print disabilities. Some of these changes have come voluntarily, others in response to court orders.

120.   For example, pursuant to a court-ordered stipulation as a temporary measure for its imminent June 23, 2020, primary, New York allowed voters to request accessible absentee ballots by email, receive the ballots and envelope template over email, mark the ballots on their computers, then print and return them by mail. New York accepted typed or electronic signatures for the application for an absentee ballot and a signature anywhere on the envelope returning the ballot.[16]

121.   In May 2020, Michigan voluntarily entered into a consent decree requiring it to "acquire a remote accessible vote by mail system (RAVBM) that

---

[16] Stipulation of Settlement & Order for the Withdrawal of the Motion for Temporary Restraining Order & Preliminary Injunction, *Hernandez v. N.Y. State Bd. Of Elections*, Case No. 1:20-cv-04003-LJL (S.D.N.Y. June 2, 2020), ECF No. 38.

shall allow voters with print disabilities to review and mark vote by mail ballots electronically, privately and independently in time for its August 2020 election."[17]

122. On July 1, 2020, Delaware announced the relaunch of its pilot accessible absentee voting program through Democracy Live for its July 7, 2020, election. The Delaware program offers electronic delivery of accessible absentee ballots, a ballot marking tool, and submission by voter choice of mail, fax, or email for military and overseas voters as well as voters with disabilities.[18]

123. The Maine UOCAVA (Uniformed and Overseas Citizens Absentee Voting Act) system already allows uniformed and overseas voters to get the ballot through the State's online service as a printable PDF.

124. In 2015, Maine Legislature passed an Act to explicitly allow for the use of the internet to provide a ballot-marking system or software that is used for voters with disabilities, uniformed service voters, or overseas voters to mark a ballot and transmit the marked ballot online.[19]

125. Voters in Maine and UOCAVA voters may apply for absentee ballots online.[20]

---

[17] Consent Decree, *Powell v. Benson*, Case No. 2:20-cv-11023-GAD-MJH (E.D. Mich. May 19, 2020), ECF No. 31.
[18] Press Release, Del. Dep't of Elections, Accessible Voting Available for July 7th Presidential Primary (July 1, 2020), https://news.delaware.gov/2020/07/01/accessible-voting-available-forjuly-7th-presidential-primary .
[19] 21-A MRSA §§ 809-A (1), (3).  See LD 1449, An Act to Amend the State Election Laws, online at file:///D:/Blind%20voters%20-20Acessible%20Absentee%20Ballot/Research/EM%20Research/Maine%20127%20-%20SP%20552%20item%201.pdf (allowing for the use of the Internet to provide a ballot-marking device or software that is used for voters with disabilities, uniformed service voters or overseas voters to mark a ballot and transmit the marked ballot online.").
[20] 21-A M.R.S. §§ 753-A and 781-A

126.   UOCAVA voters may designate electronic or mail delivery of their absentee ballot.[21] All other Maine voters may only receive a paper absentee ballot.

127.   UOCAVA voters may receive their UOCAVA absentee ballot sent electronically to them by the Secretary of State.[22] Voters who opt for electronic transmission of their ballot are emailed instructions on how to log into the online system to receive a PDF version of their absentee ballot.[23]

128.   UOCAVA voters may _return_ their completed UOCAVA ballots electronically to the Secretary of State to be counted.[24]

129.   Using their screen reader software or screen magnification, Plaintiffs would be able to privately and independently vote with accessible, fillable PDF ballots provided to them electronically. Plaintiffs would also be able to vote with a fully accessible ballot provided by a ballot marking system. Plaintiffs are unable to vote independently and privately vote with the paper absentee ballots currently in use in Maine.

130.   According to public records, Maine has received $3,512,764 in federal Help American Vote Act, 52 U.S.C. § 20901 et seq ("HAVA") funds[25] and

---

[21] 29-250 C.M.R. Ch. 525-2 § 2 (2010).

[22] 21-A M.R.S. § 783 (4) (authorizing the electronic transmission of absentee ballots to uniformed service voters or overseas voters); __ C.M.R. 29-250 Ch. 525-2 § 2(1) (2010) (state absentee ballots issued by the Secretary of State).

[23] From the Maine Department of the Secretary of State, _Frequently asked Questions: Uniformed Service and Overseas (UOCAVA)Voters,_ found online at file:///D:/Blind%20voters%20-%20Acessible%20Absentee%20Ballot/Research/EM%20Research/Maine%20127%20-%20SP%20552%20item%201.pdf

[24] 21-A M.R.S. § 783 (5) (authorizing the electronic receipt of voted absentee ballots from uniformed service voters or overseas voters by a method authorized by the Secretary of State); __ C.M.R. 29-250 Ch. 525-3 § 2(2) (2010) (outlining procedures for receiving completed ballots by electronic means).

$3,299,827 in HAVA emergency funds[26] under the Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No, 116-136 (2020) (CARES Act), in 2020, for the purpose of conducting elections safely during the pandemic. These funds could and should be used to resolve this issue.

131.   Defendants have not made their absentee voting program accessible to print-disabled individuals, including Plaintiffs, who wish to exercise their right to vote in the November 3, 2020, election, and future elections, but do not wish to risk their health, privacy, or independence to do so.

132.   Defendants' failure to meet their obligations to provide Plaintiffs with an equal opportunity to vote absentee constitutes discrimination against them, and is an ongoing and continuous violation of the ADA and its implementing regulations, Section 504 and the Maine Human Rights Act and its implementing regulations.

## FIRST COUNT
## Violation of Title II of the Americans with Disabilities Act
## 42 U.S.C. §§ 12131-12134

133.   Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs as if fully incorporated herein.

---

[25] https://www.eac.gov/payments-and-grants/2020-hava-funds
[26] https://www.eac.gov/payments-and-grants/2020-cares-act-grants

134.  Title II of the ADA guarantees qualified individuals an equal opportunity to access the benefits of the services, programs, or activities of a public entity. 42 U.S.C. § 12132.

135.  Title II mandates that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Id.*

136.  In providing aids, benefits, or services, public entities may not "[a]fford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others," nor may public entities provide qualified individuals with disabilities "an aid, benefit, or service that is not as effective in affording equal opportunity" to gain the same result or benefit as provided to others. 28 C.F.R. § 35.130(b)(1)(ii)-(iii).

137.  Public entities must make reasonable modifications to their policies, practices, and procedures when necessary to avoid discrimination against individuals with disabilities. *Id.* § 35.130(b)(7)(i).

138.  Furthermore, public entities "shall take appropriate steps to ensure that communications with applicants, participants, members of the public, and companions with disabilities are as effective as communications with others," and "shall furnish appropriate auxiliary aids and services where necessary to afford

individuals with disabilities, including applicants, participants, companions, and members of the public, an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a public entity." *Id.* § 35.160.

139. To be effective, "auxiliary aids and services must be provided in . . . such a way as to protect the privacy and independence of the individual with a disability." *Id.* § 35.160(b)(2).

140. Auxiliary aids and services include "screen reader software; magnification software; optical readers; … accessible electronic and information technology; or other effective methods of making visually delivered materials available to individuals who are blind or have low vision." *Id.* § 35.104.

141. Because they are blind, Plaintiffs are individuals with disabilities protected by the ADA. *See* 42 U.S.C. § 12102; 28 C.F.R. § 35.108.

142. Plaintiffs are registered to vote in Maine and intend to vote in the November 3, 2020, election, and other future elections. Plaintiffs are qualified to receive voting services from Defendants and are entitled to the protections afforded under the ADA. *See* 42 U.S.C. § 12131(2).

143. Organizational Plaintiff DRME is statutorily authorized to represent individuals with disabilities under the ADA.

144. Defendant Sec. Dunlap heads the Department of State. The Department of State is a public entity subject to Title II of the ADA. See 42 U.S.C. § 12131(1).

145. Defendants City and Town Clerks/Registrars of Voters Kelly Gooldrup, Goodwin, Jones, and Gilliam each operate the voting programs in the local governments where they are employed including the Cities of Augusta, Bangor, and Portland, and the Town of Winslow. Defendants Augusta, Bangor, Portland, and Winslow, and the Town and City Clerks (in their official capacities) that run elections in these municipalities are public entities subject to Title II of the ADA. 42 U.S.C. § 12131(1).

146. Voting by absentee or mail-in ballot is a service, program, or activity provided by Defendants.

147. Defendants' absentee voting programs discriminate against Plaintiffs because these individuals cannot register to vote absentee, apply for an absentee ballot, or vote via absentee ballot secretly and independently, as other voters can.

148. Defendants have also discriminated against Plaintiffs voters by failing to make the instructions on their website for voting during the pandemic accessible.

149.   Defendants have failed to provide Plaintiffs with an opportunity to vote by absentee or mail-in ballot that is equal to the opportunity provided to other voters that do not have disabilities.

150.   Defendants could make reasonable modifications to their absentee and mail-in ballot voting process by offering accessible online voting to Plaintiffs.

151.   Defendants have failed to afford Plaintiffs auxiliary aids and services necessary to afford them effective communication in the absentee and mail-in voting process.

152.   Defendants have excluded and continue to exclude Plaintiffs and other voters who are print-disabled from participation in, and denied them the benefits of, or otherwise discriminated against them in, their absentee voting programs.

153.   As a result of Defendants' actions and inactions, Plaintiffs and those similarly situated have suffered and will continue to suffer irreparable harm. They have suffered and continue to suffer from discrimination and unequal access to Defendant's programs, services, or activities. And in the absence of injunctive relief, Plaintiffs and those similarly situated will be denied their right to vote by absentee ballot privately and independently.

154.   In light of COVID-19, and the rapidly approaching election in November, Plaintiffs and other print-disabled voters are at imminent risk of irreparable harm absent injunctive relief for the November 3, 2020, general

election. Many print-disabled individuals do not have assistance in their homes to complete paper forms and ballots and cannot seek assistance or vote in person due to fears for their health. For that reason, Defendants' actions and inactions may prevent such individuals from voting in the general election.

155. Because of Defendants' intransigence, Plaintiffs and other print disabled individuals will face the unconscionable choice of either leaving their homes in order to receive in-person assistance with voting at the closest polling place— thereby facing the threat of severe illness or death—or staying home and foregoing the right to vote privately and independently (if third-party assistance is available), or foregoing the right to vote entirely (if it is not).

156. Defendants' failure to meet their obligations to provide Plaintiffs and print-disabled voters with an equal opportunity to vote by absentee or mail-in ballot is an ongoing violation of the ADA and its implementing regulations. Unless restrained from doing so, Defendant will continue to violate the ADA and to inflict irreparable injuries for which Plaintiffs have no adequate remedy at law.

157. Plaintiffs are entitled to injunctive relief, including the requested temporary restraining order, as well as reasonable attorney's fees and costs.

**SECOND COUNT**
**Violation of Section 504 of the Rehabilitation Act of 1973**
**29 U.S.C. 794 et seq.**

158. Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs as if fully incorporated herein.

159. Plaintiffs Merrill, Giudice, Lamontagne, and Peabody are individuals with disabilities who are registered and eligible to vote, and therefore are protected by Section 504. Organizational Plaintiff DRME has members who are qualified individuals with disabilities under Section 504. The Maine Department of the Secretary of State receives federal financial assistance, and therefore is subject to Section 504. 29 U.S.C. § 794. The Cities of Augusta, Bangor, and Portland, and the Town of Winslow each receive federal financial assistance, and therefore are subject to Section 504. *Id.* Individual Defendants are sued in their official capacities as those responsible for carrying out the operations of Defendant Secretary of State or the Cities of Augusta, Bangor, Portland the Town of Winslow.

160. Section 504 mandates that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. . . ." *Id.* § 794(a).

161. Section 504 defines "program or activity" to include "all of the operations of . . . a department, agency, special purpose district, or other instrumentality of a State or of a local government" or "the entity of such State or

local government that distributes such assistance and each such department or agency (and each other State or local government entity) to which the assistance is extended, in the case of assistance to a State or local government[.]" *Id.* § 794(b)(1).

162.   Such federally-funded entities may not, in providing aids, benefits, or services, "[d]eny a qualified handicapped person the opportunity accorded others to participate in the program or activity receiving Federal financial assistance." 28 C.F.R. § 42.503(b)(1)(i).

163.   Such federally-funded entities must also "insure that communications with their . . . beneficiaries are effectively conveyed to those having impaired vision and hearing," *id*. § 42.503(e), and, if the entity has 15 or more employees, must "provide appropriate auxiliary aids to qualified handicapped persons with impaired sensory, manual, or speaking skills where a refusal to make such provision would discriminatorily impair or exclude the participation of such persons in a program or activity receiving Federal financial assistance," *id*. § 42.503(f).

164.   Defendant Sec. Dunlap is the Secretary of the Maine Department of State, which is an agency or instrumentality of the State of Maine that receives federal financial assistance, and thereby is subject to the requirements of Section 504.

165. Defendants Gooldrup, Goodwin, Jones and Gilliam are the Town Clerks and Registrars of Voters of the municipalities of Augusta, Bangor, Portland, and Winslow, each of which respectively receive federal financial assistance, and thereby is subject to the requirements of Section 504.

166. The absentee voting program and the administration of the programs are a service, program, or activity provided by Defendants.

167. Plaintiffs each have substantial limitations in the major life activity of seeing are people with disabilities under Section 504.

168. Plaintiffs are registered to vote in Maine and are thus qualified individuals with disabilities entitled to the protections of Section 504.

169. Organizational Plaintiff DRME has members who are qualified individuals with disabilities under Section 504.

170. Organizational Plaintiff DRME is statutorily authorized to represent individuals with disabilities under Section 504.

171. Defendants have failed and continue to fail to meet their obligations to provide blind voters an opportunity to vote that is equal to the opportunity provided to other voters.

169. In denying use of an accessible absentee voting program, Defendants refuse to provide an auxiliary aid or service that would allow Plaintiffs equal access to vote.

170.    Accordingly, Defendants have discriminated and continue to discriminate against Plaintiffs with respect to their inaccessible absentee voting program.

171.    As a result of Defendants' actions, Plaintiffs have suffered and will continue to suffer irreparable harm; they have suffered and continue to suffer from discrimination and unequal access to Defendants' program, service, or activity of voting by absentee ballot.

172.    The technology to make their absentee voting program accessible is readily available to Defendants and would allow independent, private absentee registration and voting for print-disabled people.

173.    In the absence of injunctive relief, including a preliminary injunction, Defendants will continue to deny Plaintiffs their right to participate in their absentee voting programs privately and independently in the November 3, 2020, general election and in future elections.

174.    Plaintiffs are entitled to injunctive relief, including a temporary restraining order, as well as reasonable attorney's fees and costs.

**THIRD COUNT**
**Violation of the Maine Human Rights Act**
**5 M.R.S.A. 4551 *et seq.***

175.    Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs as if fully incorporated herein.

176.   The Maine Human Rights Act was enacted in 1971 to acknowledge "the basic human right to a life with dignity" by preventing discrimination in employment, housing or access to public accommodations as well as in the extension of credit and in education.  5 M.R.S. § 4552.

177.   Subchapter 5 of the Maine Human Rights Act guarantees every individual "[t]he opportunity . . . to have equal access to places of public accommodation without discrimination because of . . . disability." 5 M.R.S. § 4591.

178.   "Public accommodation" includes "an establishment of the State or local government."  5 M.R.S. § 4553 (8). Public accommodation means a public entity or private entity that owns, leases, leases to or operates a place of public accommodation; "public entity" in turn means state or local government or any department, agency, special purpose district or other instrumentality of the State or local government. 5 M.R.S. §§ 4553 (8-B); (8-C)(A),(B).

179.   The MHRA declares it a denial of public accommodation "[f]or any public accommodation or any person who is the operator, manager, agent or employee of any place of public accommodation to directly or indirectly refuse, discriminate against or in any manner withhold from or deny the full and equal enjoyment to any person, on account of . . . disability . . ." 5 M.R.S. § 4592 (1); 94-348 C.M.R. Ch. 7, Sec.7.02 (A) (1997).

45

180.   In providing services, a public entity shall not deny or afford an individual with a disability, or class of individuals, with an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others; nor may a public entity provide individuals with disabilities an aid, benefit, or service that is not as effective in affording equal opportunity to gain the same result or benefit as provided to others.  94-348 C.M.R. Ch. 7, Sec. 7.03 (A), (B) (1997).

181.   Public accommodations must make reasonable modifications to their policies, practices, and procedures when necessary to avoid discrimination against individuals with disabilities. *Id*. § 7.16 (A).

182.   Furthermore, public accommodations "shall take those steps that may be necessary to ensure that no individual with a physical or mental disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services." *Id.* § 7.17 (A).

183.   The term 'auxiliary aids and services' includes but is not limited to screen reader software; magnification software; optical readers; . . . accessible electronic and information technology; or other effective methods of making visually delivered materials available to individuals who are blind or have low vision; [a]cquisition or modification or equipment or devices; or other similar services and actions. *Id.* §§ 7.17 (B)(2)-(4).

184. A public accommodation "shall furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with physical or mental disabilities;" and "a public accommodation should consult with individuals with disabilities whenever possible to determine what type of auxiliary aid is needed to ensure effective communication." *Id.* §§ 7.17(C)(1); 7.17(C)(1)(ii).

185. Finally, "[i]n order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability." *Id.* § 7.17(C)(1)(ii).

186. As individuals with blindness, Plaintiffs have per se disabilities pursuant to the Maine Human Rights Act, 5 M.R.S. § 4553(1)(B), and they are substantially limited in the major life activity of seeing. 5 M.R.S. § 4553(1)(A)(1).

187. Plaintiffs are registered to vote in Maine and intend to vote in the November 3, 2020, election, and all other upcoming elections. Each Plaintiff meets the essential eligibility requirements to receive voting services from Defendants, and each is therefore a qualified individual. 5 M.R.S. § 4551 (8-D).

188. Organizational Plaintiff DRME has members who are qualified individuals with disabilities under the Maine Human Rights Act.

189. Organizational Plaintiff DRME is statutorily authorized to represent individuals with disabilities under the Maine Human Rights Act.

188.   Defendant Sec. Dunlap heads the Maine Department of Secretary of State, and is the operator, manager, agent or employee of the Department of the Secretary of State. Defendant Town Clerks/Registrars of Voters Gooldrup of Augusta, Goodwin of Bangor, Jones of Portland, and Gilliam of Winslow run elections in their municipalities and are the operator, manager, agent, or employee of the municipalities where they are employed. The Department of the Secretary of State and the Cities of Augusta, Bangor, Portland and Winslow are each public entities and public accommodations pursuant to Subchapter 5 of the Maine Human Rights Act.

189.   Defendants have violated the MHRA in the same manner as alleged under Count 1, Violation of the ADA and Count 2, violation of Section 504. *Flood v. Bank of America Corp.*, 780 F.3d 1 (1st Cir. 2015) (holding that by closely tracking federal employment discrimination law, the Maine Legislature intended courts to look to federal case law to provide significant guidance in the construction of the Maine Human Rights Act).

190.  Plaintiffs are entitled to injunctive relief, including the requested temporary restraining order or preliminary injunction and attorney's fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that this Court enter judgment in their favor and award them the following relief:

A preliminary and permanent injunction prohibiting Defendants from violating the ADA, Section 504, and the Maine Human Rights Act, and requiring Defendants to remedy their absentee ballot system by implementing a remote, effective accessible absentee balloting system for Plaintiffs and those similarly situated for the November 3, 2020, election and all future elections;

A declaration that Defendants have violated and continue to violate the ADA, Section 504, and the Maine Human Rights Act;

Costs and attorney's fees under 42 U.S.C. §§ 1988, 12133; 29 U.S.C. 795 §§ 1988, 12133; 29 U.S.C. 795 §§ 505 (2), (b); 42 U.S.C. § 12205, 5 M.R.S. § 4614 and any other appropriate relief.

Such other relief as this Court deems proper and just.

Dated: September 8, 2020

/s/ *Kristin L. Aiello*_____
Kristin L. Aiello, ME Bar No. 8071
Attorney for Plaintiffs
DISABILITY RIGHTS MAINE
160 Capitol Street, Suite 4
Augusta, Maine 04330
(207) 626-2774
kaiello@drme.org

Dated: September 8, 2020

/s/ *Peter M. Rice*_____
Peter M. Rice, ME Bar No. 7277
Attorney for Plaintiffs
DISABILITY RIGHTS MAINE
160 Capitol Street, Suite 4
Augusta, Maine 04330
(207) 626-2774
pmrice@drme.org

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically filed the foregoing document entitled First Amended Complaint via the Court's CM/ECF system, which will serve a copy of same upon all counsel of record.

DATED: September 8, 2020

/s/ Kristin L. Aiello
Kristin L. Aiello, ME Bar No. 8071
Attorney for Plaintiffs
DISABILITY RIGHTS MAINE
160 Capitol Street, Suite 4
Augusta, Maine 04330
(207) 626-2774
kaiello@drme.org