# SETTLEMENT AND RELEASE AGREEMENT

This Settlement Agreement ("Agreement") is made and effective this 21st day of May, 2021, by and between Lynn Merrill, Nicholas Giudice, Pauline LaMontagne, Cheryl Peabody and Disability Rights Maine (collectively, the "Plaintiffs"); and the City of Portland and Portland City Clerk & Registrar of Voters Katherine Jones, the City of Bangor and Bangor City Clerk & Registrar of Voters Lisa Goodwin, the City of Augusta and Augusta City Clerk & Registrar of Voters Kelly Gooldrup and the Town of Winslow and Winslow Town Clerk & Registrar of Voters Lisa Gilliam, collectively referred together as the "Municipalities." Plaintiffs and the Municipalities are collectively referred to as the "Parties."

**Whereas,** Plaintiffs filed a complaint and an amended complaint in the United States District Court for the District of Maine currently pending as Case No. 1:20-cv-00248-JAW, alleging violations of Title II of the Americans with Disabilities Act (the "ADA"), Section 504 of the Rehabilitation Act ("Section 504"), and the Maine Human Rights Act ("MHRA") based on an alleged failure of the Municipalities to provide a mechanism for individuals with print disabilities to vote by absentee ballot in an accessible and independent manner (the "Lawsuit"); and

**Whereas,** the Municipalities deny the material allegations of the Lawsuit; and

**Whereas,** the Parties wish to resolve the Lawsuit and avoid the uncertainty and expense of litigation.

**Now, therefore,** in consideration of the mutual promises, covenants, and agreements set forth herein, the Parties covenant and agree as follows:

1. **General Release**. In consideration of the agreement made by the Municipalities as set forth below, and other good and valuable consideration, the receipt of which is hereby acknowledged, the Plaintiffs, being of lawful age, and fully competent, hereby for themselves, their heirs, executors, administrators, attorneys, successors, and assigns IRREVOCABLY AND UNCONDITIONALLY, RELEASE, ACQUIT, AND FOREVER DISCHARGE the Municipalities and their respective successors and assigns, from any and all claims, losses, damages, and expenses (including attorneys' fees and expenses except where noted herein) whatsoever, whether known or unknown, suspected or unsuspected, foreseen or unforeseen, liquidated or unliquidated, which they have, or have ever had at any point prior to and up to and including the Effective Date of this Agreement and arising out of or connected with any acts or failure to act occurring at any time whatsoever regarding the claims which were asserted in the Lawsuit, including, without limitation, all claims arising under the Americans with Disabilities Act, the Maine Human Rights Act, the Rehabilitation Act of 1973, or under any other State or Federal or Local law.

Notwithstanding the foregoing, this Agreement shall not release or otherwise affect or limit (i) the rights and obligations of the Parties arising out of this Agreement; (ii) the right of the Parties to enforce this Agreement; (iii) any claims which by law cannot be released; (iv) any claims arising after the Effective Date of this Agreement.

2. **Definitions.** The following terms shall have the following meanings with respect to this Agreement. All other terms shall be interpreted according to their plain and ordinary meaning:

    a. Unless otherwise provided in this Agreement, technical terms used in this Agreement have the same meaning as provided in the Web Content Accessibility Guidelines ("WCAG") 2.0 published by the World Wide Web Consortium ("W3C"), available at www.w3.org/TR/WCAG/. The term "WCAG 2.0 AA" as used in this Agreement incorporates the WCAG 2.0 Level A and Level AA Success Criteria. "Accessible Forms" are forms, applications, ballots, or transactions that are electronically fillable and submissible, produce a savable confirmation of submission for users, are provided in an HTML format option, and are compliant with WCAG 2.0 AA.

    b. "Print disabilities" are disabilities that interfere with the effective reading, writing, or use of printed material. By way of example, this definition includes, but is not limited to, those persons who are blind or visually impaired, those with cognitive or learning disabilities, as well as those with a physical disability that interferes with holding and manipulating paper or a pen or pencil.

    c. "Conformance" and "conform" have the same meaning as used in WCAG 2.0 AA.

    d. "Effective Date" is the date of the last signature on this Agreement.

    e. "Accessible Absentee Ballots" are electronically fillable and submissible, produce a savable confirmation of submission for users, are provided in an HTML format option, and are compliant with WCAG 2.0 AA, as provided in 2(a) of this Agreement. Accessible Absentee Ballots are received, marked, cast and submitted electronically, and ensure privacy and independence in voting for individuals with print disabilities who are able to use common assistive technology, such as standard screen reader software (JAWS, NVDA, VoiceOver or Narrator), magnification, or speech to text software independently.

    f. "State Election" means any primary election, general election or special election for any state, federal or county office, as those terms are defined in 21-A M.R.S. § 1, and any statewide referendum election.

    g. "Municipal Election" means any election for any municipal office or municipal referendum question.

    h. "Absentee Ballot Request ("ABR") Service" means a system by which the Secretary of State will provide accessible, electronic forms in HTML format through which voters with print disabilities can independently request Accessible Absentee Ballots and self-certify that they are voters with disabilities that prevent or substantially limit them from being able to privately and independently complete a paper absentee ballot, and that they require use of an accessible electronic

absentee ballot in order to vote privately and independently without visiting a clerk's office or voting place and using a ballot marking device. Once the application is approved, each voter will receive a secure login and credentials to access the state ballot, which will contain all the federal, state and county offices, and any statewide citizen initiative or people's veto petition that may qualify for the ballot for the electoral district in which the voter resides, as well as any municipal ballots submitted as described in paragraph 3(d) below.

3. **Voting by Accessible Absentee Ballot**. In consideration of the complete execution of this Agreement by the Parties and the covenants and promises contained herein, the Municipalities will provide and allow a mechanism for individuals with print disabilities to vote independently by accessible absentee ballot as follows:

   a. For any Municipal Election that does not occur in conjunction with a State Election, and that occurs **before July 1, 2021 only**, the Municipalities shall offer to voters with print disabilities an UA/PDF Absentee Ballot which is similar to the UA/PDF absentee ballot that the Secretary of State used for the November 2020 State Election.

   b. For any Municipal Election that does not occur in conjunction with a State Election, and occurs between July 1, 2021 and November 30, 2024, the Municipalities shall offer the Accessible Absentee Ballot used at the most recent State election that is held after July 1, 2021.

   c. For any Municipal Election that does not occur in conjunction with a State Election, and that occurs from the Effective Date of this Agreement through November 30, 2024, the Municipalities shall provide an Accessible Absentee Ballot or a UA/PDF Absentee Ballot (in compliance with Paragraphs 3(a) or 3(b)) to those individuals who self-certify that they are voters with print disabilities which prevent or substantially limit them from being able to privately and independently complete a paper absentee ballot, and that they require use of an accessible electronic absentee ballot in order to vote privately and independently without visiting a clerk's office or voting place and using a ballot marking device. The Municipalities shall permit eligible voters to use an Accessible Absentee Ballot to review, mark and cast their ballot electronically.

   d. For any Municipal Election that occurs in conjunction with a State Election, and that occurs from the Effective Date of this Agreement through November 30, 2024, the Municipalities shall direct voters who wish to vote via Accessible Absentee Ballot to request their State and Municipal ballots through the ABR Service. Upon notification from the Secretary of State that Accessible Absentee Ballots are being offered to municipalities, the Municipalities shall fully comply with instructions and submit their content for local ballots in proper format and on time to the Secretary or its vendor. Any local ballots that are cast by the ABR Service will be separated from the state ballot upon receipt by the Secretary and will be delivered to the Municipalities. The Municipalities shall ensure that the local ballots are

      counted.

    e. Sample Ballots and Troubleshooting. For all State and Municipal Elections, the Municipalities shall provide a link to an accessible sample ballot on its website or a link to the Secretary of State's website for demonstration purposes so that voters can practice using it before they cast their actual ballot and for purposes of technical assistance.

    f. Public Notification. The Municipalities shall provide notice to the public of the availability of the Accessible Absentee Ballot, and will post information on its website in the same locations where the Municipalities provide information about other means of absentee voting, including information about how to request an Accessible Absentee Ballot in State and Municipal Elections.

    g. This Agreement is not intended to, and shall not be interpreted to, specify any obligations for the Municipalities in any State or Municipal Election held after November 30, 2024.

    h. This Agreement is not intended to, and shall not be interpreted to, require the Municipalities to continue to use any particular absentee voting system or technology during the term of this Agreement. The Municipalities may change their absentee voting systems or technologies during the term of this Agreement, as long as the systems provide a similar ability for voters with print disabilities to vote independently using an Accessible Absentee Ballot. The Municipalities will notify Plaintiffs' counsel at least 30 days prior to implementing a new absentee voting system or technology.

4. <u>Training.</u> The Municipalities shall attend trainings on the Accessible Absentee Ballot system that the Secretary of State provides to municipal election officials pursuant to 21-A M.R.S. § 505(7-A). The Municipalities shall be knowledgeable and prepared to assist voters with disabilities in requesting and using an Accessible Absentee Ballot.

5. <u>Reporting</u>. For each Municipal Election not occurring in conjunction with a State Election that may occur on or before November 30, 2024, upon request, the Municipalities will provide Disability Rights Maine a report for the preceding Municipal Election containing the following information:

    a. The number of individuals who requested an Accessible Absentee Ballot;

    b. The number of individuals who submitted a ballot using the Accessible Absentee Ballot system;

    c. Description of any complaints or feedback received by the Clerk of the respective Municipality from voters with disabilities regarding attempts to use or use of the Accessible Absentee Ballot system and descriptions of how any complaints were resolved.  The Municipalities shall institute procedures for their respective Clerks

    to receive said complaints that go to any City employee or official or the respective municipality's vendor.

  6. <u>Notices</u>.  Any notice or communication provided to any of the Parties under this Agreement shall be made in writing and shall be delivered or sent by way of the U.S. Postal Service, private commercial carrier, hand delivery, facsimile transmission, or electronic mail to the addresses below or to such other addresses as may be specified in writing by any Party:

    a. To Plaintiffs: Kristin Aiello and Peter Rice, Disability Rights Maine, 160 Capitol Street, Suite 4, Augusta, Maine 04330, kaiello@drme.org and pmrice@drme.org and Eve L. Hill, Brown, Goldstein & Levy LLP, 120 East Baltimore Street, Suite 1700, Baltimore, Maryland 21202, ehill@browngold.com .

    b. To the City of Augusta: Stephen Langsdorf Attorney for City of Augusta and Kelly Gooldrup, PretiFlaherty, 45 Memorial Circle, # 401, Augusta, Maine 04330, slangsdorf@preti.com .

    c. To the City of Bangor: Josh Saucier, Attorney for the City of Bangor and Lisa Goodwin, City of Bangor, 73 Harlow Street, Bangor, ME 04401, josh.saucier@bangormaine.gov.

    d. To the City of Portland: Danielle P. West, Attorney for the City of Portland and Katherine Jones, City of Portland, 389 Congress Street, Portland, ME 04101, dwest@portlandmaine.gov .

    e. To the Town of Winslow: William A. Lee, III, Attorney for the Town of Winslow and Lisa Gilliam, O'Donnell Lee, P.A., P.O. Box 559, Waterville, ME 04903-0559, walee@watervillelaw.com .

  7. <u>Attorney's Fees and Costs</u>. In consideration for the complete execution of this Agreement by the Parties, the covenant and promises contained herein, and the final and irrevocable effectiveness of this Agreement, each of the respective Municipalities agrees to make the following payment within 30 calendar days after the last to occur of (1) the each Municipality's receipt of a completed IRS Form W-9 on behalf of Disability Rights Maine and (2) the dismissal of the Litigation (as set forth in paragraph 8 below):

    a. The City of Augusta, the City of Bangor, the City of Portland and the Town of Winslow shall each deliver to Kristin Aiello, Esquire, a check made payable to "Disability Rights Maine" in the amount of $2,500.00 (Two thousand, five hundred dollars).  Disability Rights Maine promises and agrees to provide to each Municipality with a completed IRS Form W-9 on behalf of Disability Rights Maine on or before the date Plaintiffs execute this Agreement.

  8. <u>Dismissal with Prejudice</u>.  Within five (5) five calendar days after the Effective Date of this agreement, Plaintiffs, through counsel, shall sign and file a "Joint Stipulation of

Dismissal with Prejudice" in the form attached as Exhibit A for Court File No. 1:20-cv-00248-JAW in the United States District Court for the District of Maine.

9. <u>Jurisdiction and Enforcement.</u>  The Parties agree that the United States District Court for the District of Maine shall retain continuing jurisdiction over any attempt to enforce this Agreement by any of the Parties. The Parties agree to jointly file this Agreement with the Court, together with a joint motion to conditionally dismiss the Complaint pursuant to Federal Rule of Civil Procedure 41(a), with the Court retaining jurisdiction to enforce the Agreement in the event of any disputes that may arise between the Parties until the Agreement terminates.

10. <u>No Admission; Liability Expressly Denied</u>.  It is understood and agreed by the Parties that this Agreement is a settlement and compromise of disputed claims, that the Municipalities expressly deny any liability to Plaintiffs and that nothing in this Agreement shall be construed as an admission of liability.  The Parties agree that no party in this matter is a "prevailing party" for purposes of seeking an award of attorneys' fees or costs under any statute or rule of court. Each party agrees to refrain from seeking further or additional relief or consideration for the matter settled herein beyond the terms of this Agreement and enforcement hereof.

11. <u>Severability</u>.  If any provision or term of this Agreement is held to be illegal, invalid, or unenforceable, such provision or term shall be fully severable; this Agreement shall be construed and enforced as if such illegal, invalid, or unenforceable provision had never comprised part of this Agreement; and the remaining provisions of this Agreement shall remain in full force and effect and shall not be affected by the illegal, invalid, or unenforceable provision or by its severance from this Agreement.  Furthermore, in lieu of each such illegal, invalid, or unenforceable provision or term there shall be added automatically as a part of this Agreement another provision or term as similar to the illegal, invalid, or unenforceable provision as may be possible and that is legal, valid, and enforceable.

12. <u>Entire Agreement, Governing Law; Exclusive Jurisdiction</u>.  This Agreement contains the full and complete understanding between the Parties with respect to the subject matter hereof, supersedes all prior agreements and understandings of the parties, whether written or oral, and cannot be modified except by a written instrument signed by each party.  Its terms are not a mere recital.  To the extent permitted by law, the execution, validity, construction, and performance of this Agreement shall be construed and enforced in accordance with the laws of Maine without regard to its conflicts of law provisions.

13. <u>Interpretation of Agreement</u>.  This Agreement shall not be construed against any party on the basis that that party's attorney drafted it.

14. <u>Execution in Counterparts</u>. This Agreement is being executed in one or more counterparts, each of which shall be deemed an original and all of which together constitute one and the same instrument, and photographic copies of such signed counterparts may be used in lieu of the original. Electronic signatures shall be deemed to be as valid and enforceable as original ink signatures.

15. <u>Acknowledgement</u>.  By executing this Agreement, the Parties acknowledge that (a) they have consulted with, or have had sufficient opportunity to consult with counsel regarding this matter generally and specifically with regard to the terms of this Agreement; (b) any and all questions regarding the terms of this Agreement have been asked and answered to their complete satisfaction; (c) Plaintiffs acknowledge that either they have read this Agreement in full or this Agreement has been read to them in full, and they fully understand its terms and their import; (d) except as provided by this Agreement, the Parties have no contractual right or claim to the benefits described herein; (e) the consideration provided for herein is good and valuable; (f) **the Parties are entering into this Agreement voluntarily, of their own free will, and without any coercion, undue influence, threat, or intimidation of any kind or type whatsoever**.

IN WITNESS WHEREOF, the parties have signed below:

**PLEASE READ THIS DOCUMENT CAREFULLY.  THIS SETTLEMENT AGREEMENT INCLUDES RELEASES OF KNOWN AND UNKNOWN CLAIMS.**

**LYNN MERRILL**

<u>/s/ Lynn Merrill</u>
Lynn Merrill
Dated: May 12, 2021


**NICHOLAS GIUDICE**

<u>/s/ Nicholas Giudice</u>
Nicholas Giudice
Dated: May 12, 2021


**PAULINE LAMONTAGNE**

<u>/s/ Pauline Lamontagne</u>
Pauline Lamontagne
Dated: May 12, 2021


**CHERYL PEABODY**

<u>/s/ Cheryl Peabody</u>
Cheryl Peabody
Dated: May 12, 2021

**DISABILITY RIGHTS MAINE**

*/s/ Kim Moody*
By: Kim Moody
Its Executive Director
Dated: May 12, 2021

**[REST OF PAGE INTENTIONALLY BLANK]**

**KELLY GOOLDRUP, AUGUSTA CITY CLERK & REGISTRAR OF VOTERS**

/s/
Kelly Gooldrup
Dated: May 21, 2021

**CITY OF AUGUSTA**

/s/
By: William R. Bridgeo
Its: City Manager
Dated: May 21, 2021

**LISA GOODWIN, BANGOR CITY CLERK & REGISTRAR OF VOTERS**

/s/
Lisa Goodwin
Dated: May ___, 2021

**CITY OF BANGOR**

/s/
By: Catherine M. Conlow
Its: City Manager
Dated: May ___, 2021

**KATHERINE JONES, PORTLAND CITY CLERK & REGISTRAR OF VOTERS**

/s/
By: Danielle P. West
Its: Corporation Counsel

**CITY OF PORTLAND**

/s/
By: Danielle P. West
Its: Corporation Counsel

9

**KELLY GOOLDRUP, AUGUSTA CITY CLERK & REGISTRAR OF VOTERS**

*/s/*
Kelly Gooldrup
Dated: May ___, 2021

**CITY OF AUGUSTA**

*/s/*
By: William R. Bridgeo
Its:  City Manager
Dated: May ___, 2021

**LISA GOODWIN, BANGOR CITY CLERK & REGISTRAR OF VOTERS**

*/s/ Lisa J. Goodwin*
Lisa J. Goodwin
Dated:  May 21, 2021

**CITY OF BANGOR**

*/s/ Catherine M. Conlow*
By: Catherine M. Conlow
Its:  City Manager
Dated: May 21, 2021

**KATHERINE JONES, PORTLAND CITY CLERK & REGISTRAR OF VOTERS**

*/s/*
By:  Danielle P. West
Its:  Corporation Counsel

**CITY OF PORTLAND**

*/s/*
By:  Danielle P. West
Its:  Corporation Counsel

9

17442567.1
17442567.2

**KELLY GOOLDRUP, AUGUSTA CITY CLERK & REGISTRAR OF VOTERS**

*/s/*
Kelly Gooldrup
Dated: May ___, 2021

**CITY OF AUGUSTA**

*/s/*
By: William R. Bridgeo
Its:  City Manager
Dated: May ___, 2021

**LISA GOODWIN, BANGOR CITY CLERK & REGISTRAR OF VOTERS**

*/s/*
Lisa Goodwin
Dated:  May ___, 2021

**CITY OF BANGOR**

*/s/*
By: Catherine M. Conlow
Its:  City Manager
Dated: May __, 2021

**KATHERINE JONES, PORTLAND CITY CLERK & REGISTRAR OF VOTERS**

/s/ Katherine L. Jones
By:  Katherine L. Jones
Its:  Portland City Clerk & Registrar of Voters
Dated: May 20, 2021

**CITY OF PORTLAND**

/s/ Danielle P. West
By:  Danielle P. West
Its:  Corporation Counsel
Dated: May 20, 2021

9

Dated: May __, 2021

**LISA GILLIAM, WINSLOW TOWN CLERK & REGISTRAR OF VOTERS**

/s/ Lisa Gilliam (May 17, 2021 15:26 EDT)

Lisa Gilliam
Dated: May 17, 2021

**TOWN OF WINSLOW**

/s/ Erica LaCroix

By: Erica LaCroix
Its: Town Manager
Dated: May 17, 2021

17442567.1
17442567.2